HUNZINGER CONSTRUCTION COMPANY, Plaintiff-Appellant-Cross Respondent,

v.

GRANITE RESOURCES CORP., Defendant-Respondent-Cross Appellant.

Court of Appeals

No. 94–1626. *Submitted on briefs June 5, 1995.—Decided August 8, 1995.*

(Also reported in 538 N.W.2d 804.)

On behalf of the plaintiff-appellant-cross respondent, the cause was submitted on the briefs of *S. Todd Farris* of *Friebert, Finerty & St. John, S.C.*, of Milwaukee.

On behalf of the defendant-respondent-cross appellant, the cause was submitted on the briefs of *Michael A.I. Whitcomb* of the *Law Offices of Michael A.I. Whitcomb*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

FINE, J. This is an appeal and cross-appeal from a judgment entered on a jury verdict awarding to Hunzinger Construction Company damages that the jury found that Hunzinger sustained as a result of a breach of a contract by Granite Resources Corp.

Hunzinger Construction was the general contractor in connection with a streetscaping project in Milwaukee's "Third Ward" district. Hunzinger claimed, and the jury found, that transactions between Hunzinger and Ronald Yeisley, an employee of Granite Resources, constituted a binding agreement for the delivery by Granite Resources to Hunzinger of granite and limestone. During the course of the project, Hunzinger and Granite Resources disputed terms of the agreement, and Granite Resources refused to deliver some of the stone unless Hunzinger Construction acquiesced to its demands. Hunzinger Construction brought this action seeking both specific performance and damages. Granite Resources counterclaimed for its damages.

The appeal and cross-appeal present the following issues: (1) whether the trial court erred in permitting Hunzinger Construction to elicit the substance of conversations two of its employees had with Yeisley, who was deceased at the time of trial; (2) whether the jury's award of damages was supported by the evidence; (3) whether Hunzinger Construction is entitled to its actual attorneys' fees. Additionally, Granite Resources seeks a new trial in the interests of justice. We affirm.

1. *Application of § 885.17, STATS.*

■

The general rule in Wisconsin is that all persons are competent to testify as witnesses, except insofar as prohibited by what is popularly known as the "dead

331

man's statutes," §§ 885.16 & 885.17, STATS. RULE 906.01, STATS.[1] Granite Resources sought a determination from the trial court that § 885.17 prevented two employees of Hunzinger Construction from testifying about their conversations with Yeisley. The trial court permitted the employees to testify, and Granite Resources appeals.[2]

A trial court's decision to admit or exclude evidence is a discretionary determination that will not be upset on appeal if it has "a reasonable basis" and was made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " *State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983) (citation omitted). The trial court's interpretation of § 885.17, STATS., however, is a question of law that we review *de novo. See State v. Olson*, 175 Wis. 2d 628, 633, 498 N.W.2d 661, 663 (1993).

As pertinent here, § 885.17, STATS., provides that "[no] party . . . shall be examined as a witness in respect to any transaction or communication by the party . . .

---

[1] RULE 906.01, STATS., provides: "**General rule of competency**. Every person is competent to be a witness except as provided by ss. 885.16 and 885.17 or as otherwise provided in these rules."

[2] The trial court explained its reasons in an oral decision:

The Court finds, as I say, the decisions of the Wisconsin Supreme Court are to the effect that this is a statute which is to be narrowly construed. Taken [sic] the literal words of the statute, neither [of the employees of Hunzinger Construction] come within any of the prohibited descriptions of persons who may not be examined as witnesses. So the motion to — the motion in limine is denied. The fact that they are employees of a corporation, that it may affect their relationship one way or another with the corporation is something that goes to their credibility and can be argued before the jury on that basis, so your motion is denied.

with an agent of the adverse party . . . when such agent is dead."[3] Granite Resources argues that when a party to a lawsuit is a corporation, the word "party" in § 885.17, STATS., must, perforce, encompass employees of the corporation because a corporation can only speak through its employees. Hunzinger Construction, on the other hand, contends that the interests of employees in the litigation are too remote for the dead man's statutes to bar their testimony.

The dead man's statutes are the last surviving remnants of rules that prohibited testimony by those with an interest in the litigation. *See* 3 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE, ¶ 601[03] at 601–20 to 601–21 (1991); *see also Long v. Molay*, 46 Wis. 2d 450, 458, 175 N.W.2d 254, 259 (1970). Accordingly, they are "not looked upon with favor" and must, "whenever possible," be strictly interpreted to prevent their use. *Giese v. Reist*, 91 Wis. 2d 209, 222, 281 N.W.2d 86, 91–92 (1979). Indeed, courts, including the Wisconsin Supreme Court, have "insist[ed] upon exceptionally

---

[3] Section 885.17, STATS., provides in full:

**Transactions with deceased agent.** No party, and no person from, through or under whom a party derives the party's interest or title, shall be examined as a witness in respect to any transaction or communication by the party or person personally with an agent of the adverse party or an agent of the person from, through or under whom such adverse party derives his or her interest or title, when such agent is dead or insane, or otherwise legally incompetent as a witness unless the opposite party shall first be examined or examine some other witness in his or her behalf in respect to some transaction or communication between such agent and such other party or person; or unless the testimony of such agent, at any time taken, be first read or given in evidence by the opposite party; and then, in either case respectively, only in respect to such transaction or communication of which testimony is so given or to the matters to which such testimony relates.

strict rules" as a prerequisite to the application of the dead man's statutes. *See Long,* 46 Wis. 2d at 459, 175 N.W.2d at 259. This requires that the statutes be construed as narrowly as possible. *See American Casualty Co. v. M.S.L. Industries, Inc.*, 406 F.2d 1219, 1221 (7th Cir. 1969) (§ 855.16 did not bar testimony on corporation's behalf by officer of corporation's unincorporated division who had, by time of trial, sold his stock in corporation) (applying Wisconsin law); *Hanf v. The Northwestern Masonic Aid Ass'n,* 76 Wis. 450, 452–453, 45 N.W. 315, 315 (1890) (insurance agent permitted to testify for the insurance company about statements made to him by deceased policy holder because predecessor to § 885.16, STATS., did not specifically prevent agents of parties from testifying).[4] *Hanf* explained its rationale:

---

[4] Section 885.16, STATS., provides:

**Transactions with deceased or insane persons.** No party or person in the party's or person's own behalf or interest, and no person from, through or under whom a party derives the party's interest or title, shall be examined as a witness in respect to any transaction or communication by the party or person personally with a deceased or insane person in any civil action or proceeding, in which the opposite party derives his or her title or sustains his or her liability to the cause of action from, through or under such deceased or insane person, or in any action or proceeding in which such insane person is a party prosecuting or defending by guardian, unless such opposite party shall first, in his or her own behalf, introduce testimony of himself or herself or some other person concerning such transaction or communication, and then only in respect to such transaction or communication of which testimony is so given or in respect to matters to which such testimony relates. And no stockholder, officer or trustee of a corporation in its behalf or interest, and no stockholder, officer or trustee of a corporation from, through or under whom a party derives the party's interest or title, shall be so examined, except as aforesaid.

That section only excludes the testimony of a party to the action, or the person under whom he derives his title to or interest in the subject of the action, of transactions and communications had by him personally with a deceased or insane person through whom the opposite party claims or defends. *It does not exclude the testimony of the agent of the party or person whose testimony is thus excluded.* At the common law the testimony of a party to the action was absolutely excluded, but the agent of such party was a competent witness to prove the whole cause of action or the defense, although the opposite party derived his interest in the subject matter of the controversy through a deceased person. [The predecessor to § 885.16, STATS.,] does not exclude testimony which was admissible at the common law.

*Ibid.* (Emphasis added.) By the same token here, § 885.17, STATS., disqualifies from the general rule of competency commanded by RULE 906.01, STATS., a "party" and someone "from, through or under whom a party derives his interest or title" when either the party or the person from whom the party derived his or her interest seeks to testify about transactions with the deceased agent of the adverse party; the statute does not disqualify employees or agents of parties, whether or not the party is a corporation. Significantly, when the drafters of the dead man's statutes desired to disqualify those employed by corporate parties, they did so with unmistakable clarity. As can be seen from footnote 4, § 885.16, unlike § 885.17, extends the disqualification to corporate stockholders, officers, and trustees.[5] Reading these two interrelated provisions

---

[5] There is no evidence in the record that the employees of Hunzinger Construction whose testimony was permitted were either stockholders, officers, and trustees of the corporation.

together, *see City of Milwaukee v. Milwaukee County*, 27 Wis. 2d 53, 56, 133 N.W.2d 393, 395 (1965) ("statutes relating to the same subject matter should be read together"), reaffirms our view that employees of a party are not within the disqualification imposed by § 885.17, even when the party is a corporation.[6] The Hunzinger employees whose testimony the trial court received were neither parties to this action nor persons "from, through or under whom a party derives his interest or title." Accordingly, the trial court appropriately permitted them to testify.[7]

### 2. *Sufficiency of the evidence.*

■

Recognizing that a jury's assessment of damages must be sustained if there is any supporting evidence in the record that the jury could have believed, *see*

---

Accordingly, the applicability *vel non* of § 885.16, STATS., to this case is not before us.

[6] We understand and sympathize with Granite Resources's frustration that § 885.17, STATS., does not bar employees of a party-corporation from testifying, but, as noted, we are enjoined to construe the dead man's statutes as narrowly and literally as is possible.

[7] We base our decision on the clear language of § 885.17, STATS. We thus do not discuss whether the interests of the employees of Hunzinger Construction in the litigation were so " 'uncertain, remote, or contingent' " so as to render inapplicable the statute on that ground as well. *See State v. Fonk's Mobile Home Park*, 133 Wis. 2d 287, 298, 395 N.W.2d 786, 792 (Ct. App. 1986) (citation omitted). An assessment of the interests of the employees requires fact-finding by the trial court pursuant to RULE 901.04(1), STATS. ("Preliminary concerning the qualification of a person to be a witness . . . shall be determined by the judge."). This was not done here.

336

*Ostreng v. Lowrey*, 37 Wis. 2d 556, 560–561, 155 N.W.2d 558, 559 (1968), Granite Resources nevertheless argues that we must reverse the jury's assessment of $14,250 as Hunzinger Construction's damages caused by the late delivery by Granite Resources of material for the streetscaping project. We disagree.

■ There was testimony that Granite Resources's failure to timely deliver granite caused a five-week delay in the project. An employee of Hunzinger Construction testified that this delay added some $13,009 to the company's overhead costs, $13,942 in administrative costs, loss-of-productivity expenses of $3,060, and $5,597 in direct expenses. It was in the jury's province to accept or reject any or all of this evidence. *See Weeden v. Beloit*, 29 Wis. 2d 662, 666, 139 N.W.2d 616, 618 (1966) ("In reviewing a jury verdict[,] this court need only consider that evidence which supports the verdict."). That the trial court upheld the verdict answer adds to our faith in its validity. *See ibid.* The $14,250 assessed by the jury is within the range of the evidence presented to it. Accordingly, we affirm on this issue.

3. *Attorneys' fees.*

Hunzinger Construction seeks the attorneys' fees it incurred getting the trial court to order specific performance of its contract with Granite Resources, and claims that the following clause in the purchase order authorizes the award:

> Delivery hereunder must be effected within the time specified or, if none be specified, within a reasonable time after placement of this order. The Vendor agrees, however, to reimburse the purchaser in any event for any loss, cost or expense incurred including special damages as a result of

337

> delay in or failure to make delivery and, further, to indemnify and hold harmless the purchaser from any liability, claims of liability or expenses resulting from such delay or failure, without prejudice to any other remedies available to the purchaser at law, in equity, by statute or otherwise. If deliveries are so far behind the schedules specified in this order as to make it necessary for us to request you to make shipments by other means, it is understood that increased transportation costs will be for your account.

The purchase order was Hunzinger's form, which was presented to Granite Resources for its acceptance. Hunzinger contends that the phrase "reimburse [Hunzinger Construction] in any event for any loss, cost or expense incurred including special damages as a result of delay in or failure to make delivery" encompasses attorneys' fees. The trial court disagreed. Although our review is *de novo, see Edwards v. Petrone*, 160 Wis. 2d 255, 258, 465 N.W.2d 847, 848 (Ct. App. 1990), we affirm.

Wisconsin follows the "American Rule," under which parties are generally responsible for their own attorney fees. *Kremers-Urban Co. v. American Employers Ins. Co.*, 119 Wis. 2d 722, 744, 351 N.W.2d 156, 167–168 (1984). Under this rule, "with the exception of those attorneys' fees incurred in third-party litigation caused by the party against whom the fees are sought, attorneys' fees may not be awarded unless authorized by statute or by a contract between the parties." *Milwaukee Teachers' Educ. Ass'n v. Milwaukee Bd. of School Directors*, 147 Wis. 2d 791, 796–797, 433 N.W.2d 669, 671 (Ct. App. 1988). Hunzinger is not

seeking to recover litigation expenses it has incurred in a dispute with a third party.

Contracts must be construed as they are written, *Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 38, 284 N.W.2d 692, 702–703 (Ct. App. 1979), *aff'd*, 100 Wis. 2d 120, 301 N.W.2d 201 (1981), and any ambiguity is to be interpreted against the drafter, *Goebel v. First Fed. Sav. & Loan Ass'n*, 83 Wis. 2d 668, 675, 266 N.W.2d 352, 356 (1978). Although the phrase "reimburse [Hunzinger Construction] in any event for any loss, cost or expense incurred including special damages as a result of delay in or failure to make delivery" in Hunzinger's purchase order form could be read as Hunzinger contends, and is therefore ambiguous, *see Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653, 656 (Ct. App. 1990), the words more credibly address only damages consequential to a delay, rather than reimbursement for expenses (including attorneys' fees, which are not mentioned) incurred to prevent either a further delay or a complete "failure to make delivery." Indeed, the fact that reimbursement for attorneys' fees is not mentioned in the delay-in-delivery clause, even though it *is* provided for specifically in the immediately preceding clause, is cogent evidence that attorneys' fees reimbursement was not intended.[8]

---

[8] The clause in the purchase order that immediately precedes the delay-in-delivery clause provides:

> You agree to hold us harmless from, and to indemnify us against all loss, liability, damage and expense (including in the case of litigation, reasonable attorneys' fees and disbursements) arising from or suffered or incurred in connection with (a) any claim or injury to person or property caused in whole or in part by any act or omission by you, your agents or employees while executing this order or making delivery hereunder or (b) any claim, with respect to any of the merchandise called for by this order or arising

*See Goebel*, 83 Wis. 2d at 673–676, 266 N.W.2d at 355–357 (applying principle of *expressio unius est exclusio alterius*). Indeed, in this case, as in *North Gate Corp. v. National Food Stores, Inc.*, 30 Wis. 2d 317, 323, 140 N.W.2d 744, 748 (1966), "[w]e cannot ignore the draftsman's failure to use an obvious term, especially where it is the draftsman who is urging a tenuous interpretation of a term in order to make it applicable to a situation that would clearly have been covered if the obvious term had been chosen." Hunzinger Construction's purchase-order form could have used the term "attorneys' fees" in the delay-of-delivery clause as easily as it used that term in the immediately preceding indemnity-for-claims clause. As is the general rule, we will not construe an obligation to pay attorneys' fees contrary to the American Rule unless the contract provision clearly and unambiguously so provides. *See, e.g., Bank of Maine v. Weisberger*, 477 A.2d 741, 745 (Me. 1984); *Wheeling Trust & Sav. Bank v. Citizens Nat'l Bank*, 491 N.E.2d 866, 870 (Ill. App. 1986). We affirm the trial court on this issue.

### 4. *Reversal in the interest of justice.*

As a final argument on this appeal, Granite Resources seeks discretionary reversal under § 752.35, STATS.[9] Under this provision, we have authority to reverse "when the real controversy has not been fully

---

out of the use of such merchandise, or infringement of any patent, copyright, trademark, tradename, brand or slogan, or of unfair competition or any adverse claim of statutory or non-statutory rights or (c) any litigation based on any claim referred to above. We agree to give you reasonable notice of the commencement of any such litigation.

[9] Section 752.35, STATS., provides:

tried" or "when it is probable that justice has for any reason miscarried and [we] can conclude that a new trial would probably produce a different result." *Vollmer v. Luety*, 156 Wis. 2d 1, 27, 456 N.W.2d 797, 809 (1990) (Bablitch, J., concurring on behalf of six members of the court). Eschewing the second ground, Granite Resources argues that the case has not been fully tried because the trial court erroneously permitted Hunzinger Construction employees to testify about their communications with Yeisley. We have already held that this was not error. Accordingly, we reject Granite Resources's suggestion that discretionary reversal under § 752.35 is appropriate.

*By the Court.*—Judgment affirmed.

**Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.